# Illinois Official Reports

## Appellate Court

---

### *People v. Brown*, 2015 IL App (1st) 131552

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BYRON BROWN, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-13-1552 |
| Filed<br>Rehearing denied | June 30, 2015<br>August 7, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CR-14369 (02); the Hon. Steven J. Goebel, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Alan J. Goldberg, and Adrienne River, all of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan Spellberg and Gina DiVito, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE HYMAN delivered the judgment of the court, with opinion.<br>Presiding Justice Pucinski and Justice Lavin concurred in the judgment and opinion. |

**OPINION**

¶ 1 Following a jury trial, defendant Byron Brown was convicted of felony murder based on a fatal traffic accident that occurred while he and his co-offender, Rodney Jones, fled from the scene of a residential burglary. Brown contends the State did not prove him guilty beyond a reasonable doubt because he could not have foreseen that his codefendant's "irrational and dangerous" driving during their escape would result in the victim's "almost inevitable" or "likely" death. We affirm.

¶ 2 The jury properly found Brown guilty of felony murder where the evidence showed he committed a residential burglary and then, with his codefendant at the wheel, sped away from the police. Jones failed to stop at intersections, which resulted in a fatal traffic accident. During the commission of the residential burglary, Brown and Jones set in motion a chain of events that caused the death.

¶ 3 During deliberations, the jury requested a definition of foreseeability. After defense counsel agreed the court should not provide the jury with a definition, the jury was instructed to continue deliberating. Brown argues that because foreseeability was a "sharply disputed issue at trial, and the key to acquittal," defense counsel was ineffective for failing to provide a definition to the jurors when they requested one. But, the jury received instructions that fairly and accurately stated the applicable law. Defense counsel's decision to offer no definition of foreseeability to the jury's question during deliberations was trial strategy and, therefore, cannot serve as a basis for an ineffective assistance of counsel claim. Counsel spent the majority of his closing argument defining foreseeability to fit the defense theory.

¶ 4 BACKGROUND

¶ 5 The evidence at trial showed that on July 3, 2008, a burglary occurred at the single family bungalow on South Langley, Chicago, where Anthony Shaw and Jocelyn Hunter lived. Hunter ran a club about a mile away from her home and, on the date of the burglary, Shaw arrived at the club around 3:30 p.m. to help her clean and stock. When Shaw and Hunter left their house, it was locked and undamaged. Around 6 p.m., a friend of Shaw's came into the club to tell Hunter and Shaw that someone had broken into their home and was still there. Shaw tried to call the police but was unsuccessful.

¶ 6 Shaw and his friend left the club and went to the home. As Shaw looked down the alley toward his house, he saw "some guys" standing against a neighbor's garage. Shaw drove toward 78th Street and flagged down the marked police car of Officer John Kennedy and his partner, Officer Passerelli. Shaw told them about the burglary and pointed down the alley in the direction of his house. Coming toward them from the alley was a white Suburban sport utility vehicle (SUV). The SUV did not stop as it came out of the alley and drove the wrong direction on 78th Street. The officers activated their lights and sirens and pursued the SUV, which increased its distance from the police car by failing to slow down at any intersections, as the police car did. Officer Kennedy broadcast a radio description of the SUV and its direction to alert fellow officers. When the SUV turned right, Officer Kennedy was four blocks behind it on 78th Street.

¶ 7 When the officers arrived at the intersection of 76th and State, they saw an accident ahead. The SUV they had been pursuing rested against a light pole on the northeast corner. The

officers pulled behind the SUV. Officer Kennedy did not see anyone inside the SUV. Those gathered nearby pointed east and said three men from the SUV had run in that direction. Officer Kennedy ran in that direction toward an alley. He radioed to let other responding officers know that the suspects were on foot and which direction they went. At the time, Officer Kennedy did not know that another vehicle was involved in the accident.

¶ 8    When Officer Kennedy returned, he learned another car, a Cadillac, had been involved and came to a halt farther north on State Street against a fence. Officer Kennedy saw people trying to help the woman inside, who was later identified as Tommye Freeman. She died from her injuries at a hospital.

¶ 9    Officer Johnson received Officer Kennedy's radio broadcast alerting him that a white SUV "used in a burglary" had crashed at 76th and State. Officer Johnson arrived there, saw an accident had happened and received the radio transmission that three African-American males had run east from the SUV. Officer Johnson began looking for the suspects on foot. He entered the rear yard at 7532 South Michigan, where he saw Brown crouching alone in the basement stairwell.

¶ 10    After Shaw identified Brown as someone he believed had been in the SUV, Brown was transported to the 6th district police station. During a custodial search, police found on Brown two yellow bracelets, a checkbook, and a cross. Officer Johnson looked inside the SUV and noticed several large items he believed were proceeds from the burglary–two televisions, 32 and 50 inches, and two laptops, one gray and one silver. Officer Johnson removed the items from the SUV and inventoried them at the 6th district police station.

¶ 11    Officer Kennedy learned that the BP gas station on the northwest corner of 76th and State had video surveillance equipment recording the intersection. Officer Kennedy obtained the videotape that showed the accident. The recording was played for the jury.

¶ 12    When Shaw entered his house, he found his bedroom had been ransacked and numerous items taken, including a 32-inch television, a 50-inch television and some tools. Later that night, when Hunter returned home, she noticed her son's checkbook was missing, as well as her tennis bracelet and other jewelry. Shaw went to the police station and identified the property the officers had recovered as items from his home.

¶ 13    Officers Johnson and Vivanco interviewed Brown around 7:30 p.m., after Officer Johnson gave him his *Miranda* warnings. Officer Vivanco testified at trial that in response to his question to Brown about how he was involved in the car accident and burglary, Brown replied:

"Man, you know I was there. Everyone knows I was there. There were people out there. They have cameras at the gas station."

Vivanco testified that Brown told him he ran because "he was scared." Vivanco further testified Brown stated:

"He knew he was going to be–something bad was gonna happen. The two guys that he was with, they knew that the victim had a lot of TVs and computer at his house, he just went along with them but he knew something bad was gonna happen."

¶ 14    Evidence technician officer Steven O'Connell processed and photographed the crime scene of the residential burglary. He recovered fingerprints. After the burglary division learned Tommye Freeman had died from her injuries, they notified the homicide detective division and Detective Wade Golab was assigned to the case. Detectives recovered a hat from the scene of the accident that looked like it could have come from one of the suspects.

¶ 15    Evidence technician Edward Grabarek took a buccal swab from Rodney Jones on September 10, 2008. Jones's DNA matched the DNA found on the driver's side airbag of the white SUV; Jones was arrested and charged with Freeman's murder.

¶ 16    In late 2008, Detective Brogan contacted Detective Golab and told him he had information about a phone call Brown placed to Ronesha Foots; Golab received a copy of a recording of the call. Foots testified Brown was the father of her daughter and they were dating in July 2008. On July 3, 2008, she said Brown was with her, but he left when he received a call from Jones and Pierre Skipper. Later that day, Foots got a call that police had arrested Brown.

¶ 17    Evidence technician officer Edward McCartan collected evidence from the white SUV. He recovered blood from the outside doors and recovered the following from inside the vehicle: a cigarette butt, chapstick, a water bottle, a CD, a red T-shirt, an airbag, and a pair of gym shoes. The items were inventoried and sealed.

¶ 18    Deborah McGarry, a forensic scientist and an expert in the field of latent fingerprint examination and analysis, examined the fingerprint samples. She compared latent prints lifted from the residential burglary scene to the prints of Jones and Brown and found them to match.

¶ 19    Forensic evidence determined that the DNA found on the SUV's driver's side door and airbag matched Jones's DNA. The DNA from the recovered cigarette found inside the SUV and the baseball hat recovered at the scene after the accident matched Brown.

¶ 20    At the conclusion of the State's case, Brown moved for a directed verdict, which the court denied. The defense rested and the parties presented closing arguments.

¶ 21                          Jury Instructions and Deliberations

¶ 22    The parties extensively argued jury instructions. The trial court ultimately determined that a modified version of Illinois Pattern Jury Instructions, Criminal, No. 7.15A (IPI) would be given.

> "A person commits the offense of first degree murder when he commits the offense of residential burglary and the death of an individual results as a direct and foreseeable consequence of a chain of events set into motion by his commission of the offense of residential burglary. It is immaterial whether the killing is intentional or accidental or committed by a confederate without the connivance of the defendant. A person may be held responsible for a death that occurs during an escape following the commission of residential burglary."

The court added the last sentence, which defense counsel objected to.

¶ 23    During deliberations, the jury sent out a note, "Is there a legal or more complete definition of the term foreseeable?" As the parties debated how to respond to the jury question, defense counsel stated that he was "not aware of any definition we could give them." The State could not find a definition in the IPI and agreed with defense counsel. Defense counsel suggested they could use a dictionary definition and a discussion ensued regarding using civil jury instructions. Although a definition of foreseeability was found in Black's Law Dictionary, the parties agreed the court should tell the jurors to continue deliberations. The jury was told, "You have heard all of the evidence and you have all of the instructions. Please continue to deliberate."

¶ 24    The jury returned a guilty verdict of first degree murder. Brown filed a posttrial motion for a new trial or judgment notwithstanding the verdict, arguing the court erred in failing to

instruct the jury that a felon is responsible for those deaths which occur during a felony and which are the foreseeable consequence of the initial criminal act and that the trial court should have provided a definition of "foreseeable" in response to the jury's question. The trial court denied Brown's posttrial motion. The court sentenced Brown to 25 years' imprisonment and denied his motion to reconsider the sentence.

¶ 25                                           ANALYSIS

¶ 26     Brown contends the State failed to prove him guilty beyond a reasonable doubt of felony murder because he could not have foreseen that his codefendant's "irrational and dangerous" driving during their escape from committing residential burglary would "likely" or "almost inevitably" result in the victim's death.

¶ 27                        Sufficiency of the Evidence of Felony Murder

¶ 28     The relevant inquiry when faced with a challenge to the sufficiency of the evidence involves, after viewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Campbell*, 146 Ill. 2d 363, 374 (1992). As a reviewing court, we will not substitute our judgment for that of the trier of fact on questions concerning the weight of the evidence or the credibility of the witnesses. *Id*. at 375. We will not reverse a criminal conviction unless the evidence is so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of the defendant's guilt. *Id*.

¶ 29     The jury convicted Brown of felony murder predicated on residential burglary. A person commits first degree murder when he or she "kills an individual without lawful justification *** if, in performing the acts which cause the death: *** he [or she] is attempting or committing a forcible felony." 720 ILCS 5/9-1(a)(3) (West 2008). The forcible felony was the residential burglary. 720 ILCS 5/2-8 (West 2008).

¶ 30     Illinois adheres to the "proximate cause" theory of liability for felony murder, meaning "liability attaches under the felony-murder rule for any death proximately resulting from the unlawful activity." *People v. Lowery*, 178 Ill. 2d 462, 465 (1997). "A felon is liable for those deaths which occur during a felony and which are the foreseeable consequence of his [or her] initial criminal acts." *Id.* at 470. Additionally, a defendant may properly be held responsible for a death that occurs during an escape following the commission of a forcible felony. *People v. Klebanowski*, 221 Ill. 2d 538, 549 (2006); see also *People v. Hickman*, 59 Ill. 2d 89, 94 (1974) (time and activities involved in escaping to a place of safety are part of crime).

¶ 31     Brown argues that as a passenger in the SUV during the escape he could not reasonably have foreseen that Jones would drive in an "irrational and dangerous" manner and, accordingly, cannot be held responsible for Freeman's unforeseeable death. As further support for his position, Brown offers the fact that neither he nor Jones carried weapons during the commission of the residential burglary. Brown argues this fact shows they had no intention of using force to escape and, from this, he contends the victim's death could not be a foreseeable consequence of his actions in carrying out the residential burglary because he never contemplated the use of force or violence. According to Brown, Jones did not merely lose control of the car while speeding during their escape, but "made the unexpected and irrational decision to ignore the stoplight and drive directly into heavy traffic in an intersection–conduct that impeded escape and put himself and his passengers at the risk of death and injury." Brown

maintains that the State failed to show how the accident was the "almost inevitable" result of the burglary, making the victim's death reasonably foreseeable.

¶ 32    To sustain a conviction for felony murder, the State need not prove the defendant contemplated "that his actions would result specifically in death," only that he or she intended to commit the underlying felony. *People v. Hudson*, 354 Ill. App. 3d 648, 655 (2004) (citing *People v. Causey*, 341 Ill. App. 3d 759, 769 (2003)). To sustain its burden, the State must prove the defendant "set[ ] in motion a chain of events which were or should have been within his contemplation." *Lowery*, 178 Ill. 2d at 467. Moreover,"[i]t is unimportant that defendant did not anticipate the precise sequence of events that followed [the forcible felony]." *Id.* at 470; see also *People v. Brackett*, 117 Ill. 2d 170, 180-81 (1987) (defendant did not have to foresee victim would die of asphyxiation while being fed in nursing home following rape and beating to sustain felony murder conviction).

¶ 33    The facts presented establish Brown's guilt for the residential burglary and the murder of an innocent victim during his escape from the burglary. Although Brown did not perform the acts that caused Freeman's death–"irrational and dangerous" driving–he did participate in the residential burglary and the escape that culminated in Freeman being the victim in a fatal car accident. Brown's participation in the forcible felony set in motion a chain of events that led to Freeman's foreseeable death. It was sufficient for Brown to have contemplated that, to avoid liability, his actions would require escape from the home without capture. Freeman's death directly resulted from Brown's actions in committing the residential burglary and attempting to escape capture.

¶ 34    The evidence presented to the jury showed that on July 3, 2008, a burglary at Hunter and Shaw's home and the removal of personal items occurred. A friend told Shaw about the burglary and that the burglars remained at the home. He immediately went home and as he approached, Shaw saw a group of men in the alley. Shaw flagged a nearby police car. As Shaw explained what had transpired, he pointed in the direction of his house and then both Shaw and the officers saw a white Suburban SUV coming toward them down the alley from Shaw's house. The SUV did not stop as it came out of the alley and proceeded in the wrong direction down 78th Street. The police pursued the SUV with sirens and lights activated, but the SUV did not slow down or brake. Instead, the SUV increased the distance between it and the police car by failing to stop as it crossed intersections. When the SUV turned, the police car was four blocks behind. When the officers arrived at the intersection of 76th and State, they could see the SUV resting against a light pole on the northeast corner having been in an accident. Brown, who had run, was found hiding in a basement stairwell behind a nearby home. When the police questioned Brown about the events, he said he "knew something bad was gonna happen." Neither Brown nor Jones carried weapons during the burglary and none were found at the location of the accident.

¶ 35    Brown argues that because the absence of weapons during the resident burglary establishes that he and Jones never contemplated the potential use of violence, "it was even less foreseeable to a reasonable person in Brown's position that codefendant would recklessly endanger lives of other drivers during flight from the police." In support for his position, Brown cites *People v. Belk*, 203 Ill. 2d 187, 192 (2003), and argues the State offered no evidence that he could reasonably foresee that Jones would endanger lives should police pursue them. He also relies on language from *Lowery* and *Hudson* in arguing the State could not show Freeman's death was "almost inevitable" (*Lowery*, 178 Ill. 2d at 467) and "likely"

- 6 -

from his actions (internal quotation marks omitted) (*People v. Hudson*, 222 Ill. 2d 392, 401 (2006)).

¶ 36    Our supreme court has determined that a defendant does not have to anticipate the precise sequence of events leading to the fatality. *Lowery*, 178 Ill. 2d at 470. In *People v. Dekens*, 182 Ill. 2d 247, 254 (1998), the supreme court reaffirmed this principle, explaining that "the focus of the proximate cause theory is on the chain of events set in motion by the defendant." Focusing on the chain of events Brown's actions set in motion, we agree with the State that liability for Freeman's death is warranted as a foreseeable consequence.

¶ 37    We find *People v. Hickman*, 59 Ill. 2d 89 (1974), cited by the State, more in line with the facts than the cases cited by Brown. In *Hickman*, a police officer pursuing fleeing burglars was mistakenly shot and killed by another officer who mistook the pursuing officer as one of the burglars. *Id.* at 94. In finding the defendant guilty of felony murder, our supreme court noted that "commission of the burglary, coupled with the election by defendants to flee, set in motion the pursuit by armed police officers." *Id.* The shot that killed the officer responded to the escape of the fleeing burglars and, therefore, constituted a direct and foreseeable consequence of the defendant's commission of the crime. *Id.* Relying on *Hickman*, the State argues the application of the felony murder doctrine does not depend on the identity of the person whose physical action specifically caused the decedent's death but, instead, on whether the fatality was a foreseeable consequence of the defendant's forcible felony. See also *People v. Cervantes*, 408 Ill. App. 3d 906 (2011) (discussing foreseeable conduct in context of resisting police officer, court held it reasonably foreseeable that pursuing officer might be injured when defendant chose to run from police in icy and snowy conditions).

¶ 38    Brown's participation in the residential burglary, coupled with his choice to escape the consequences of his actions by fleeing with Jones, set in motion the circumstances that concluded in the fatal accident. Put another way, had Brown not participated in the residential burglary and then fled, Freeman would not have been killed. That Brown claims he and Jones were unarmed during the forcible felony is irrelevant. As our supreme court has indicated, " ' "[i]t is unimportant that the defendants did not anticipate the precise sequence of events that followed ***. His unlawful acts precipitated those events, and he is responsible for the consequences." ' " *People v. Klebanowski*, 221 Ill. 2d 538, 548 (2006) (quoting *Hickman*, 59 Ill. 2d at 94, quoting *People v. Smith*, 56 Ill. 2d 328, 333-34 (1974)).

¶ 39    After considering the evidence in the light most favorable to the State, we affirm Brown's conviction. Any rational trier of fact could have found Brown guilty beyond a reasonable doubt. As a matter of law, Brown is responsible for Freeman's death, which occurred during his escape from the commission of the residential burglary. Brown's participation in the burglary set in motion a chain of events that ultimately caused the death.

¶ 40                              Ineffective Assistance of Counsel

¶ 41    To establish ineffective assistance of counsel, a defendant must show both a deficient performance by counsel that falls below an objective standard of reasonableness and prejudice, meaning a reasonable probability that absent counsel's error, the result would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The failure to satisfy either prong dooms the claim. *People v. Givens*, 237 Ill. 2d 311, 331 (2010).

¶ 42    Jury instructions convey to the jury the law that applies to the evidence presented. *People v. Herron*, 215 Ill. 2d 167, 187 (2005) (citing *People v. Fuller*, 205 Ill. 2d 308, 343 (2002)). Jury

instructions should not be misleading or confusing. *People v. Bush*, 157 Ill. 2d 248, 254 (1993). "[T]he general rule is that the trial court has a duty to provide instruction to the jury where it has posed an explicit question or requested clarification on a point of law arising from facts about which there is doubt or confusion." *People v. Childs*, 159 Ill. 2d 217, 228-29 (1994). The trial court, however, may properly exercise its discretion to "decline to answer a jury's inquiries where the instructions are readily understandable and sufficiently explain the relevant law, where further instructions would serve no useful purpose or would potentially mislead the jury, when the jury's inquiry involves a question of fact, or if the giving of an answer would cause the court to express an opinion which would likely direct a verdict one way or another." *Id.* at 228. How the trial court responds to a jury question during deliberations ordinarily falls within the discretion of the trial court "so that the trial court's decision will be disturbed on appeal only if that decision constituted an abuse of discretion." *People v. Falls*, 387 Ill. App. 3d 533, 537 (2008).

¶ 43    In response to the jury's note asking for the definition of "foreseeable," both parties indicated they were inclined to tell the jury to continue deliberating. The State informed the court it had briefly looked for a definition in the IPI, but had not found one. The court personally asked Brown if he agreed with instructing the jury to continue deliberating and he did. Defense counsel then stated:

> "Judge, if I can throw something out there? I know there is an alternative of getting a definition from a source other than the IPI, a regular dictionary ***. I don't have a definition here."

The court then inquired whether the parties had a way to access the civil IPI. Defense counsel indicated he could use the Internet; the State expressed its hesitation to look to civil instructions, but reserved opinion on the matter. The trial judge retired to chambers and consulted Black's Law Dictionary for the definition of "foreseeability." The court read aloud the definition, "the ability to see or know in advance hence the reasonable anticipation that harm or injury is a likely result of acts or omissions." The court then took a brief recess.

¶ 44    Back on the record, the State indicated it could not find a definition in the civil IPI. Defense counsel stated he did not feel comfortable with the parties drafting anything in response to the jury question and suggested instructing the jury to continue deliberating. With no objection from either party, the court instructed the jury it had heard all of the evidence and had the instructions, so it was to continue deliberations.

¶ 45    Brown argues Illinois Supreme Court authority or the Black's Law Dictionary definition of foreseeability could have easily been incorporated into a response to the jury's note. Brown suggests the jury's note shows the jury struggling with how foreseeable Freeman's death had to be to support a felony murder conviction. Brown contends defense counsel's failure to propose a response defining "foreseeable" was objectively unreasonable, leaving the jury with no guidance on how likely the victim's death needed to be to find Brown guilty of felony murder. Brown maintains that a "properly instructed" jury would have concluded that because Brown and Jones did not arm themselves before the burglary, "they did not plan to avoid potential apprehension with violence" and, therefore, the fact that someone could be killed by their actions was not reasonably foreseeable. Brown insists that Jones' "irrational behavior" caused Freeman's death, an unforeseeable consequence of the residential burglary.

¶ 46    As support, Brown cites *People v. Lowry*, 354 Ill. App. 3d 760, 766-67 (2004), in which this court determined trial counsel was ineffective for failing to offer the pattern instruction

defining "knowledge" in response to the jury's question. The defendant was charged with aggravated battery and armed robbery. *Id*. at 761. During deliberations, the jury asked whether " 'knowingly' " implied " 'that it wasn't an accident, or can it be accidental and knowing[?]' " *Id*. at 762. The attorneys and the court agreed to respond that the jury had been instructed on the law, heard all of the evidence, and should keep deliberating. *Id*. On appeal, we reversed and remanded for a new trial. We held that because the jury's question expressed confusion about the meaning and application of the term "knowingly," the question should have been answered with the pattern instruction and, therefore, trial counsel was ineffective for failing to request the instruction. *Id*. at 765-66, 768.

¶ 47  Brown contends that, just as in *Lowry*, defense counsel should have asked the court to respond to the jury's note because the jury sought clarification on an important point of law and counsel's failure to do so constitutes ineffective assistance. See also *People v. Coots*, 2012 IL App (2d) 100592, ¶¶ 46-52 (counsel's acquiescence in trial court's decision not to answer jury's question for definition of "delivery," in drug-induced homicide case, was objectively unreasonable).

¶ 48  Unlike in *Lowry*, the trial court's refusal to define foreseeability for the jury did not create "a serious danger that the jury would (and did) convict defendant based on facts that were legally insufficient to establish [the crime]." *Id.* ¶ 51.

¶ 49  The State relies on *People v. Hicks*, 2015 IL App (1st) 120035, in which we held that the trial court in a robbery prosecution need not define "force" when the jury requested a definition. In holding as it did, the *Hicks* court cited to *People v. Bradley*, 192 Ill. App. 3d 387, 393 (1989), which held that words with a "commonly understood meaning" need not be defined for the jury. *Hicks*, 2015 IL App (1st) 120035, ¶ 54. We find unpersuasive Brown's contention that *Hicks* was wrongly decided.

¶ 50  The instructions tendered to the jury accurately state the applicable law concerning felony murder. See *People v. Hudson*, 222 Ill. 2d 392, 408 (2006) (same language used to instruct jury here "simply and concisely stated the law on proximate cause"). Thus, the claim of ineffective assistance of counsel fails–the trial court made the appropriate decision in declining to provide the jury with a definition of "foreseeable" because the jury instructions correctly stated the law.

¶ 51  Moreover, during closing arguments, defense counsel contended that the fatal car collision was not a foreseeable result of Brown's actions. Counsel urged the jury to pay attention to the language of the jury instruction, specifically foreseeability. Counsel defined foreseeability for the jury as "was it planned, contemplated, did they consider this was going to happen. Those are ways of talking about foreseeability." Defense counsel's argument encouraged the jury to adopt a "common sense" interpretation of foreseeability that fit the defense theory. Brown's counsel argued the evidence showed Brown did not foresee getting into a car and putting anyone in danger. Defense counsel told the jury:

> "So what is foreseeable? What evidence or lack of evidence can help you make a decision as to whether or not this was foreseeable? Well, there is one big and obvious answer for that. If you foresee violence as being the result of the residential burglary that you are admittedly part of, do you foresee that? What might you being with you? A weapon. A gun. A knife."

Counsel implored the jury to use "common sense" concerning what the State needed to prove to show the victim's death as foreseeable. Defense counsel asked the jury to consider Brown's lack of a weapon as evidence Brown did not foresee violence resulting from his actions.

¶ 52     Notably, counsel's decision to stand on the instructions provided to the jury constitutes reasonable trial strategy. Providing the jury with an additional dictionary definition or one from case law would have undermined defense counsel's instruction to the jurors that they should rely on their own "common sense" definition of foreseeability.

¶ 53     We reiterate that to support an ineffective assistance claim, a defendant must show both counsel's representation fell below an objective standard of reasonableness and also that the case was prejudiced as a result; failure to meet either prong precludes a finding of ineffective assistance of counsel. *Strickland*, 466 U.S. at 687. Defense counsel's decision as to what jury instructions to tender involves a matter of trial strategy that is generally immune from ineffective assistance claims. See *People v. Douglas*, 362 Ill. App. 3d 65, 75 (2005).

¶ 54     The trial court properly instructed the jury on the law and, under the circumstances presented, defense counsel acted reasonably in going along with the court's instruction to the jury to continue deliberating without the aid of a definition of foreseeable. Brown had competent representation.

¶ 55                                    CONCLUSION

¶ 56     The State introduced sufficient evidence from which a reasonable trier of fact could find Brown guilty of felony murder beyond a reasonable doubt. During the course of the commission of the residential burglary, Brown set in motion a chain of events that led to a fatal car accident while he tried to evade police capture. We affirm Brown's conviction.

¶ 57     Defense counsel's decision not to provide a definition of foreseeability to the jury at its request constitutes sound trial strategy in the face of a legally sufficient jury instruction and defense counsel's theory that the jury rely on "common sense." Thus, the ineffective assistance of counsel claim must fail.

¶ 58     Affirmed.