THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES LOWRY, Defendant-Appellant.

First District (6th Division)   No. 1—02—3411

Opinion filed December 3, 2004.—Rehearing denied January 14, 2005.

Michael J. Pelletier, Tiffany Green, and Eric M. Muellenbach, all of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and William L. Toffenetti, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'MARA FROSSARD delivered the opinion of the court:
James Lowry was charged with attempted first degree murder, aggravated battery with a firearm, and armed robbery. After a jury trial, he was found not guilty of attempted murder and found guilty of aggravated battery and armed robbery. He was sentenced to two concurrent terms of 30 years in the Illinois State Penitentiary. On appeal defendant contends as follows: (1) the trial court erred by failing to provide the definition of "knowingly" in response to a written question submitted by the jury; (2) defense counsel was ineffective when he failed to tender the pattern jury instruction defining the mental state for "knowingly" in response to the jury's question; (3) the trial court abused its discretion in denying a mistrial based on the State's failure to disclose a statement that a bribe was offered in exchange for the victim dropping the charges; and (4) the State's closing argument violated defendant's right to a fair trial.

## BACKGROUND

On November 26, 2001, defendant, Ross Bulski, and Phillip Harbaugh (PJ) agreed to meet at PJ's house to transact a drug sale. Bulski testified that during the meeting defendant tied him up, shot him in the back, and took his car keys, identification, and between $350 and $600. PJ testified the defendant tied him up and threatened him, and that he heard the gun go off.

Approximately 40 minutes after arriving at Loyola Hospital, Bulski identified a man named Marcus Ranieri as the person who shot him from photos provided by Officer Vallejo. Two days later, on November 28, 2001, Detective Page showed Bulski a photo lineup and Bulski identified defendant as the man who shot him. This photo lineup did not include any photographs of Marcus Ranieri, nor did Detective Page know that Bulski had previously identified Ranieri as the person who shot him.

Defendant gave a statement to the police and assistant State's Attorney that he did not mean to hurt or kill the victim. The defense called various police witnesses and the victim's brother, Nicholas Bulski, to testify regarding Ross Bulski's sales of narcotics. The jury found defendant guilty of armed robbery and aggravated battery with a firearm, but not guilty of attempted murder. Defendant appeals.

## I. JURY INSTRUCTION

Defendant contends the trial court committed reversible error by failing to instruct the jury with the pattern jury instruction defining "knowingly" in response to a jury question. During jury deliberation the following question was brought to the attention of the court:

"THE COURT: We received a question from the jury. It states, does, quote, knowingly, end of quote, implies [*sic*] that it wasn't an accident, or can it be accidental and knowing.

All attorneys and the judge agree on the following response. You have heard the evidence and been instructed on the law. Please keep deliberating."

The State argues that defendant has waived the issue because he failed to provide the instruction or raise the issue in his posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 187 (1988). Errors involving jury instructions are reviewed under Supreme Court Rule 451(c) (177 Ill. 2d R. 451(c)), which states that "substantial defects" are not waived "if the interests of justice require." While the defense argues the standard of review is *de novo*, the State responds the standard is "not *de novo* as defendant claims, but the plain error rule." Based on the nature of the evidence, including the victim's original identification of Marcus Ranieri as the person who shot him and the inconsistencies in the testimony of the victim and PJ, who were admitted drug dealers, the plain error exception to the waiver rule applies. *People v. Johnson*, 114 Ill. 2d 170, 198 (1986); *People v. Herrett*, 137 Ill. 2d 195, 203 (1990) (plain error rule applies when the evidence is closely balanced).

A trial court may exercise its discretion in resolving questions asked by jurors during deliberations. *People v. Reid*, 136 Ill. 2d 27, 38-40 (1990). Regarding the defendant's argument that the trial court committed reversible error by failing to properly instruct the jury, we find *People v. Childs*, 159 Ill. 2d 217, 228-29 (1994), instructive. While *Childs* addressed the trial court's *ex parte* response to a jury's question, the court in *Childs* provided detailed discussion as to the nature and extent of the duty of the trial court to provide instruction to the jury. The court in *Childs* indicated:

"A trial court may exercise its discretion and properly decline to answer a jury's inquiries where the instructions are readily understandable and sufficiently explain the relevant law, where further instructions would serve no useful purpose or would potentially mislead the jury, when the jury's inquiry involves a question of fact, or if the giving of an answer would cause the court to express an opinion which would likely direct a verdict one way or another. [Citation.] However, jurors are entitled to have their inquiries answered. Thus, the general rule is that the trial court

has a duty to provide instruction to the jury where it has posed an explicit question or requested clarification on a point of law arising from facts about which there is doubt or confusion. [Citation.] This is true even though the jury was properly instructed originally. [Citation.]" *Childs*, 159 Ill. 2d at 228-29.

In addition to defendant's argument that the trial court erred by failing to properly instruct the jury, defendant further argues his counsel was ineffective when he failed to tender the proper pattern jury instruction defining "knowingly" in response to the question by the jury. The United States and Illinois Constitutions guarantee the right to effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. A defendant claiming ineffective assistance of counsel must demonstrate that counsel's performance fell below an objective standard of reasonableness prejudicial to defendant. *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). Prejudice exists where there is a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

We note the prejudice component of *Strickland* entails more than an "outcome-determinative test"; rather, the defendant must show that counsel's deficient performance rendered the trial result unreliable or rendered the proceeding fundamentally unfair. *People v. Richardson*, 189 Ill. 2d 401, 411 (2000). Further, defendant must overcome the presumption that counsel's challenged action was trial strategy. *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065. In judging counsel's performance, the court must look to the totality of the circumstances. *Strickland*, 466 U.S. at 688, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065.

In the instant case, when the jury sent the note questioning the meaning of "knowingly," defense counsel agreed with the State and the judge to simply tell the jury to keep deliberating. The instruction defining aggravated battery with a firearm was submitted to the jury as follows:

> "A person commits aggravated battery with a firearm when he, without legal justification knowingly causes any injury to another by means of discharging a firearm."

See Illinois Pattern Jury Instructions, Criminal, 4th No. 11.23 (2000) (hereinafter IPI Criminal 4th No. 11.23). The jury also received the following issues instruction for aggravated battery with a firearm:

> "To sustain the charge of aggravated battery with a firearm, the State must prove the following propositions:

First: That the defendant intentionally or knowingly caused injury to Ross Bulski; and

Second: That the defendant did so by discharging a firearm." See IPI Criminal 4th No. 11.24.

The record reflects the mental state of "knowingly" was mentioned in the definition and issues instructions, but never defined for the jury. After deliberations began, the jury expressed confusion over the meaning of "knowingly" by sending the judge a note. The jury's note reflects a question as to whether defendant knowingly caused injury to the victim. There was confusion as to defendant's conduct and the result of his conduct as reflected by the question regarding the term "knowingly" asked by the jury as to whether knowingly "implies that it wasn't an accident or can it be accidental and knowingly." Defense counsel, rather than offering IPI Criminal 4th No. 5.01B, defining "knowingly," in response to the jury's question, agreed with the State that no further instruction was needed.

On appeal, the State supports its position taken at trial that no further instruction was needed by relying on *People v. Powell*, 159 Ill. App. 3d 1005, 1014 (1987), for the general proposition that the words "intentionally" and "knowingly" have a plain meaning within the jury's common understanding. In *Powell*, the defendant was charged with attempted murder and aggravated battery. The jury questioned whether the mental state for intentionally and knowingly was the same or different, and the defendant objected to a clarifying instruction. The judge refused any further instructions, thereby permitting the jury to "apply its own understanding of the plain meaning of those terms." *Powell*, 159 Ill. App. 3d at 1014. On appeal, the argument that defense counsel was ineffective was rejected. *Powell*, 159 Ill. App. 3d at 1015.

Defendant, relying on *People v. Brouder*, 168 Ill. App. 3d 938 (1988), argues the jury's question as to the definition of "knowingly" related to a substantive issue of law and defense counsel was ineffective for failing to tender IPI Criminal 4th No. 5.01B, defining "knowingly." In *Brouder*, the defendant was charged with one count of telephone harassment and one count of resisting arrest. The jury asked, " '[W]hat defines "knowingly resisting arrest"?' " *Brouder*, 168 Ill. App. 3d at 946. In another note the jury indicated: " 'We are confused as to the "knowingly resistance" to being arrested. Does it mean a mental state of refusing to be arrested and thereby running away, physically fighting? Will a step or two away mean resistance?' " *Brouder*, 168 Ill. App. 3d at 946. The court told the jury to continue to deliberate. Defense counsel wanted the jury's question to be answered with the instruction defining "knowingly." However, before the court

issued a ruling on whether to give the instruction defining "knowingly," the jury returned a verdict of guilty of resisting arrest. *Brouder*, 168 Ill. App. 3d at 948. On appeal, we concluded "it was reversible error for the trial court to refuse to give defendant's tendered instruction defining 'knowingly' after the jury expressed confusion over the term 'knowing resistance.' " *Brouder*, 168 Ill. App. 3d at 941.

*Brouder* was filed eight months after *Powell*. The definition of "knowingly" currently in use by the pattern instructions in No. 5.01B did not appear in earlier editions of the IPI Criminal. It was added as the result of the ruling in *Brouder*, with the Committee indicating as follows:

> "In view of *People v. Brouder*, 168 Ill. App. 3d 938, 523 N.E.2d 100, 119 Ill. Dec. 632 (1st Dist. 1988), the Committee believes its presence in this edition is now necessary. In *Brouder*, the court found reversible error in the trial court's refusal to define the word 'knowingly' when the jury had twice specifically requested a definition and reported its confusion regarding that term.
>
> The Committee takes no position as to whether this definition should be routinely given in the absence of a specific jury request. *See People v. Powell*, 159 Ill. App. 3d 1005, 512 N.E.2d 1364, 111 Ill. Dec. 727 (1st Dist. 1987), for the general proposition that the words 'intentionally' and 'knowingly' have a plain meaning within the jury's common understanding. If given, it should only be given when the result or conduct at issue is the result or conduct described by the statute defining the offense." IPI Criminal 4th No. 5.01B, Committee Note, at 142.

The instant case is similar to *Brouder*: the jury requested a definition of "knowingly" and expressed its confusion regarding application of that term. The jury specifically asked whether "knowingly" implied "that it wasn't an accident, or can it be accidental and knowing." When a jury manifests confusion or doubt, the jury should be instructed on any question of law giving rise to that doubt or confusion. *Brouder*, 168 Ill. App. 3d at 947. "Fundamental fairness includes, among other things, seeing to it that certain basic instructions, essential to a fair determination of the case by the jury, are given." *People v. Ogunsola*, 87 Ill. 2d 216, 222 (1981) (finding grave error in a jury instruction for a deceptive practice charge that did not state the defendant must have had "the intent to defraud").

■ The jury in the instant case demonstrated confusion as to the legal definition applicable to defendant's conduct and the result of that conduct. Defense counsel had the benefit of IPI Criminal 4th No. 5.01B to clear up the jury confusion as to the meaning of "knowingly." That instruction was specifically added as the result of *Brouder*, which found reversible error where the trial court did not give the instruc-

tion defining "knowingly" after the jury expressed confusion. *Brouder*, 168 Ill. App. 3d at 941. In the instant case, IPI Criminal 4th No. 5.01B would have provided the jurors with the guidance they were requesting. That instruction reads as follows:

"A person [(knows) (acts knowingly with regard to) (acts with knowledge of)] the nature or attendant circumstances of his conduct when he is consciously aware that his conduct is of such nature or that such circumstances exist. Knowledge of a material fact includes awareness of the substantial probability that such fact exists.

A person [(knows) (acts knowingly with regard to) (acts with knowledge of)] the result of his conduct when he is consciously aware that such result is practically certain to be caused by his conduct." IPI Criminal 4th No. 5.01B.

As previously noted, the jury found defendant not guilty of attempted first degree murder. Assistant State's Attorney Perry asked defendant why he shot the victim. According to Perry, defendant responded: "I didn't mean to hurt him." Perry further questioned defendant, "You didn't mean to kill him?" Defendant responded, "Yes, I didn't mean to kill him." In order to resolve whether defendant was proven guilty beyond a reasonable doubt of aggravated battery, the jury was required to determine whether the defendant acted "knowingly." Defendant's state of mind was clearly in issue. The jury's note indicates confusion as to how to legally resolve the question of whether defendant did or did not knowingly injure the victim. In order to convict defendant of aggravated battery, the State was required to prove "that the defendant intentionally or knowingly caused injury to Ross Bulski." Whether defendant accidentally injured the victim or knowingly caused injury to the victim was a critical issue in the case. That issue was the subject of the question asked by the jury as to whether "knowingly" implied "that it wasn't an accident, or can it be accidental and knowing." Both defendant's conduct and the result of defendant's conduct were in issue. See *People v. Lovelace*, 251 Ill. App. 3d 607, 619 (1993).

The State argued no additional instruction was needed because "knowingly" has a plain meaning within the jury's common knowledge. Defense counsel agreed with that approach. Such performance by counsel cannot be excused as mere trial strategy. See *People v. Anderson*, 266 Ill. App. 3d 947, 956-57 (1994). Generally, matters of trial strategy include whether to offer certain evidence or call particular witnesses, whether and how to conduct cross-examination, what jurors to accept or strike, what motions to make, whether to seek substitution or recusal of a judge, and what instructions to tender.

*Anderson*, 266 Ill. App. 3d at 956. However, the failure to offer an instruction essential to the fair determination of the case by the jury cannot be excused as trial strategy.

Defense counsel's failure to offer the proper instruction in response to the question by the jury was not trial strategy, but the result of his own confusion regarding the question asked by the jury. At sentencing, defense counsel referred to the jury's question as demonstrating the jury was confused about the intent element of the attempted murder charge, when in fact the jury's question demonstrated confusion as to the "knowingly" element of the aggravated battery charge. Defense counsel stated the following:

> "The jury found him not guilty of attempted murder. The jury sent out a question that was asking about if it was a mistake. If you remember the question that was presented, your Honor, they seemed to be hung up on the intention for the attempt murder count and I think that was evident by their question that if intent included a mistake. And I think it shows you, your Honor, that they were as confused as I think we all were after listening to the victim, and PJ Harbaugh testify to what actually happened in that apartment and how this shooting came about."

Those comments by defense counsel reflect his confusion as to the applicable law and the nature of the jury's question. The attempted murder instructions do not include the mental state of "knowingly." The jury's question did not demonstrate confusion as to the attempted murder instructions but, rather, confusion regarding the aggravated battery instructions. The aggravated battery instructions required the State to prove, beyond a reasonable doubt, the mental state of "knowingly." The jury was given instructions for attempted first degree murder, aggravated battery with a firearm, and armed robbery. The only instruction that required the State to prove the mental state of "knowingly" was the instruction for aggravated battery with a firearm, not attempted murder. See IPI Criminal 4th Nos. 11.23, 11.24. Accordingly, defense counsel by failing to answer the jury's question with IPI Criminal 4th No. 5.01B provided deficient representation.

We further reject the State's argument that any error in not offering the IPI instruction on "knowingly" was harmless beyond a reasonable doubt. Defendant gave a statement to the police and assistant State's Attorney that he did not mean to hurt or kill the victim. Defense counsel in closing did not argue that the statement demonstrated accidental conduct by defendant; however, that statement was offered by the State and relied upon by the State in closing argument. The State challenged defendant's statement to the extent it indicated the shooting was accidental; however, the State relied on the state-

ment to prove defendant shot the victim. Whether the shooting was committed accidentally or "knowingly" was clearly an issue critical to the aggravated battery charge because the State was required to prove the defendant "intentionally or knowingly caused injury to Ross Bulski." That issue was the subject of the question asked by the jury. In order for the jury to resolve the issue critical to the aggravated battery charge as to whether defendant intentionally or "knowingly" caused injury to the victim, the jury was entitled to accurate instructions. *People v. Childs*, 159 Ill. 2d 217, 228-29 (1994) (failing to respond to question asked by jury, or responding in a way that fails to answer the question, may be as prejudicial as a response that is inaccurate, misleading, or likely to direct a verdict one way or another).

A critical issue in the instant case was whether defendant fired the gun knowingly or accidentally. The failure of defense counsel to tender the IPI instruction on "knowingly" after a specific question was asked by the jurors as to the meaning of "knowingly" constitutes ineffective assistance of counsel, which prejudiced defendant regarding an issue critical to the aggravated battery charge and rendered the proceeding fundamentally unfair. We emphasize this opinion should not be interpreted as requiring the definition of "knowingly" to be routinely given in every case. It was the question by the jurors that triggered the need for further instruction. In the context of the instant case, particularly in light of the specific question by the jurors demonstrating confusion over the term "knowingly," IPI Criminal 4th No. 5.01B should have been given to provide the jurors with appropriate guidance regarding a critical element of the charge of aggravated battery.

## II. Discovery

■ Defendant argues he is entitled to a new trial because he was surprised and prejudiced by the State's discovery violation. During cross-examination of the victim, Ross Bulski, defense counsel asked what PJ had talked about with Bulski since the shooting. Bulski responded, "He called me to [ask] me how much money I wanted for the defendant so I could drop the charges." Bulski further testified that he had reported this conversation to one of the prosecutors, Miss Menzenberger. Defendant made a motion for a mistrial based on the State's failure to disclose this conversation to the defense. The motion was denied, and the trial court noted that while the State should have disclosed this conversation to defense counsel, there was no specific statement that the bribe came from defendant. The trial court concluded that if there was any prejudice as a result of defense counsel not being notified by the State, it was overcome by Miss Menzenberg-

er's testimony that she was never told that the bribe came from defendant.

The standard of review for a discovery violation is whether the trial court abused its discretion. *People v. Weaver*, 92 Ill. 2d 545, 559 (1982). A reviewing court will find an abuse of discretion when a defendant is prejudiced by the discovery violation and the trial court fails to eliminate the prejudice. *Weaver*, 92 Ill. 2d at 559. Disclosure to the accused is governed by Supreme Court Rule 412 (134 Ill. 2d R. 412). Under Rule 412(a)(i), the State is required to disclose the following:

> "[N]ames and last known addresses of persons whom the State intends to call as witnesses, together with their relevant written or recorded statements, memoranda containing substantially verbatim reports of their oral statements, and a list of memoranda reporting or summarizing their oral statements." 134 Ill. 2d R. 412(a)(i).

Illinois courts have relied on the following factors to determine whether a defendant is entitled to a new trial based on a discovery violation: (1) closeness of the evidence; (2) strength of the undisclosed evidence; (3) likelihood that prior notice would have helped defense discredit the evidence; and (4) willfulness of State in failing to disclose. *People v. Robinson*, 157 Ill. 2d 68, 81 (1993). The State admits it failed to disclose, but contends the violation did not prejudice defendant because there was no indication the bribe originated with defendant. The State further argues that defendant failed to demonstrate how disclosure would have changed his strategy or changed the outcome of the trial.

First, we address the closeness of the evidence. Based on a review of the record, this was a close case. As previously noted, the victim originally identified Marcus Ranieri as the person who shot him, but two days later changed his mind and identified defendant. The two critical witnesses in the case, the victim and PJ, were admitted drug dealers, and their testimony was inconsistent and impeached. As to the second factor, although the bribe was not made directly by defendant, it was defendant who would have greatly benefitted if the charges had been dismissed. The statement provides circumstantial evidence of defendant's guilt. Rule 412 applies "not only to formal statements made to the authorities but also statements made to anyone that might have bearing on the defendant's guilt or innocence." *Weaver*, 92 Ill. 2d at 558.

The next factor to be considered is the likelihood that disclosure would have helped the defense discredit the evidence. Had the prosecution disclosed the bribe evidence, defense counsel would have significantly changed his strategy on cross-examination by refraining

from asking questions that elicited discussion of the bribe. Moreover, defense counsel would have had the opportunity to exclude any evidence of the bribe by a motion *in limine* before trial. It is clear that disclosure of the bribe evidence before trial would have provided the defense with an opportunity to investigate it and move to suppress it. As the result of the bribe evidence not being disclosed, the defense was unable to offer evidence or modify its trial strategy in order to eliminate or lessen its impact on defendant's case. We cannot say defendant was not prejudiced by this undisclosed evidence. *People v. Tripp*, 271 Ill. App. 3d 194, 203 (1995) (new trial should be granted if defendant is prejudiced by discovery violation and trial court fails to eliminate the prejudice). As previously noted, the experienced trial judge recognized that the bribe evidence should have been disclosed.

The State recognizes that willfulness in failing to disclose is also a factor to be considered in determining whether a discovery violation requires a new trial. The State addressed this factor by reiterating that defendant suffered no prejudice and arguing that "whatever error the prosecutor may have committed in her failure to report to defendant the bribe offered to Ross Bulski by Phillip Harbaugh, the remedy of a mistrial is far too harsh a penalty."

The purpose of the discovery rule is to afford the accused protection against surprise, unfairness, and inadequate preparation. *People v. Robinson*, 157 Ill. 2d 68, 79 (1993). The prejudice resulting from surprise, unfairness, and inadequate preparation, as well as from the lack of opportunity to investigate the circumstances surrounding the undisclosed statement, is "so incalculable that it cannot be conjectured by the court." *Tripp*, 271 Ill. App. 3d at 204. Even if the failure to disclose was not willful by the State, the other three factors previously discussed demonstrate that defendant was prejudiced by the discovery violation. *Weaver*, 92 Ill. 2d at 558 (failure to disclose violates discovery rule regardless of whether State's neglect was inadvertent or purposeful).

In the instant case, the defense did not learn of the substance of this statement until the cross-examination began. As previously noted, pretrial disclosure would have given the defense the opportunity to suppress the evidence in the context of a close case. If suppression had been unsuccessful, defense counsel would have been on notice of the existence of the statement and would have been able to conduct a cross-examination without eliciting the statement. We find the State's discovery violation has resulted in prejudice that was not cured by the trial court. We cannot say that the prejudice from this error was harmless beyond a reasonable doubt. *Tripp*, 271 Ill. App. 3d at 205.

### III. Closing Argument

■ Defendant further argues that comments by the State in closing argument deprived him of a fair trial. The State contends this issue has been waived and plain error is inapplicable. Defendant admits in his brief that "none of these errors were preserved for review by both an objection and inclusion with specificity in the post-trial motion." As previously noted, based on the nature of the evidence, including the original identification by the victim of Marcus Ranieri as the person who shot him and the inherent inconsistencies in the testimony of both the victim and PJ, who were admitted drug dealers, the plain error exception to the waiver rule applies. *People v. Johnson*, 114 Ill. 2d 170, 198 (1986); *People v. Herrett*, 137 Ill. 2d 195, 203 (1990) (plain error rule applies when the evidence is closely balanced). We are mindful that the State is given wide latitude in closing argument. *People v. Evans*, 209 Ill. 2d 194, 225 (2004).

We note that the State's attempt in closing argument to explain the discrepancies between the testimony of Bulski and PJ by referencing "studies" that had been done was in fact not supported by any evidence in the record. The State argued as follows:

"You know, there has [*sic*] been studies done. I don't know if you ever heard. I hate to put you in this situation, but put yourself back into what occurred back at PJ's house if you had been there and if you had been a witness. And you're in different spots, different angles. You know, it is—studies have been done. People see things differently."

There is no question that this argument was not supported by any evidence in the record, and had an objection been made, the objection should have been sustained. *People v. Holman*, 103 Ill. 2d 133 (1984) (prosecutor should not comment on facts not in evidence). It is improper for a prosecutor to argue facts not based upon the evidence in the record. *People v. Kliner*, 185 Ill. 2d 81, 151 (1998).

We recognize that statements must be considered in the context of the closing arguments as a whole. *Evans*, 209 Ill. 2d at 225. We note that defense counsel argued as follows:

"And I suspect that the prosecutors are going to tell you well, you know what? Two people see the same thing. They're going to say—they're going to say different stories. You see, you know, a guy walks by and if you ask two people to describe them. One is going to say he is tall. One is going to say he is short. One is going to say he is wearing red. One is going to say he is wearing orange. But you know what, folks, this is a little bit more than that."

That argument by defense counsel invited a response from the State; however, the State should not on retrial interject comment referencing

"studies" unless the evidence supports such reference. A response should be based on facts in evidence.

Defendant further argues that the State's comments that neither Assistant State's Attorney Perry nor Investigator Page would risk his career by lying under oath were improper. This argument enhances witness credibility based on the status of the witness as a police officer and as an assistant State's Attorney. *People v. Montgomery*, 254 Ill. App. 3d 782, 793-94 (1993) (State's argument that assistant State's Attorney who testified would not risk his career by lying was improper because it improperly enhanced the credibility of the State's witness); *People v. Fields*, 258 Ill. App. 3d 912, 921 (1994) (improper for State to argue the police would not risk their careers by lying to jurors).

In the instant case, the defendant did not make an issue of the credibility of the police officers or the prosecutor. Rather, defense counsel argued that the credibility of PJ and the victim was the dispositive issue in the case, noting as follows: "You're talking about a two-witness case. *** They gave you two people who unfortunately are drug dealers, unfortunately lied to you numerous times." Defense counsel repeated his theory that the State failed to prove defendant guilty beyond a reasonable doubt because neither PJ nor the victim was credible. The defense relied on inconsistent statements by these witnesses, as well as contradictions between the testimony of PJ and the victim, in support of the defense argument challenging their credibility.

At various points during his closing argument the defense in fact relied on the information provided by the police and prosecutor. Defense counsel argued that Officer Vallejo's report indicated that defendant was fine and in his right mind in the hospital when he identified Marcus Ranieri as the person who shot him. Defense counsel also relied on the testimony of Investigator Page as being more credible than the testimony of the victim, who testified that the police told him he picked out the right person. Investigator Page testified that he did not tell the victim that he picked out the right person; moreover, defense counsel argued that Page was credible and the victim was lying.

Defense counsel further relied on Officer Valejo's credibility as to the victim's state of mind when he argued as follows:

"You had Officer Vallejo who I think is the most important officer in the case, the most important witness in the case because he is the one who told you, you can tell by his interview of the victim, the victim knew what he was saying. The victim knew what he was doing, extremely important."

We are mindful that when a defendant's strategy is to challenge

the credibility of the police or prosecutors, then it is appropriate for the State to respond that neither the police nor the prosecutors would risk their careers to frame the defendant. *People v. Davis*, 228 Ill. App. 3d 835, 841 (1992). The State gave a lengthy closing argument incorrectly asserting that defense counsel characterized Page and Perry as liars. However, defense counsel did not once mention the testimony of attorney Perry in his closing argument. Contrary to the State's argument, defense counsel did not challenge the credibility of Page or even mention the statement that defendant gave to Page and Perry. The record reflects it was the prosecution who interjected the theme of defense counsel characterizing Perry and Page as liars, which was never communicated by defense counsel in closing argument. The State argued:

"And then, you know, I didn't hear anything in the closing argument but counsel keeps saying this is a two witness case, okay, based on PJ and based on Ross. Well, what about State's Attorney Paul Perry? I mean, he's been a State's Attorney 29 years. Okay, 29 years. You think he is going to come in here and risk his whole career as a State's Attorney and lie as counsel says for two drug dealers? He came in here and said, he sat him down. He gave him his *Miranda* warnings and he said, hey, can you tell me what happened the day before over at that address on Walnut, you know, in reference to the shooting over there, you know, involving the people on Walnut?

DEFENSE COUNSEL: Objection, That is not what he said.

THE COURT: The jury will use your best recollection of the evidence.

THE STATE: Well, he said, I am here to question you what happened the day before at the address of Walnut in Franklin Park. And what did this guy say? What did the defendant say? You know, he came out and said, I didn't mean to shoot him, you know. I didn't mean to kill him. So, I mean, is Paul Perry supposed to be part of this conspiracy? Is he trying to you know, risk his whole career on behalf of these two victims? I mean come on. It is not just a two-witness case.

We got a statement from the defendant. I mean, he is not giving all the facts because he is saying, hey, I didn't mean to kill him. I didn't mean to hurt him. You know, but he is putting himself there at the house the day before on Walnut.

And, again, you heard from Investigator Page from the Franklin Park Police Department. He's been a detective, I think, for seven years, whatever years on the force. You know, you think he is going to risk his career as counsel states for two young punks who are drug dealers and sit there and lie on their behalf. What did he say?

He was part of that statement. And defendant again told him that, I didn't mean to kill. I didn't mean to shoot the boy. I didn't intend to kill the boy. Again, so this isn't a two-witness case.

We have a state's attorney and a veteran investigator who took a statement right from his mouth that he was there."

Argument that enhances witness credibility based on the status of the witnesses should not be repeated by the State. Defense counsel neither directly nor indirectly indicated that either Page or Perry was lying on behalf of the victim and PJ. Rather, defense counsel's theory was that neither the victim nor PJ was credible because they both were admitted drug dealers who repeatedly lied or contradicted themselves to the police and at trial. On retrial, unless defense counsel challenges the credibility of Perry and Page, the prosecution should not repeat its argument enhancing witness credibility based on the status of the witnesses.

By failing to sustain the defense objection to the improper characterization by the prosecution of defense counsel's theory, the trial judge gave credibility to the prosecutor's improper argument. *People v. Kidd*, 147 Ill. 2d 510 (1992). The timing of the improper arguments further prejudiced defendant. The State made these comments in rebuttal argument, and defense counsel, other than by way of objection, had no opportunity to substantively challenge the improper comments or respond to the misstatement of fact. *People v. Sutton*, 316 Ill. App. 3d 874, 896 (2000).

For the reasons previously discussed, we reverse and remand. Double jeopardy is not implicated because there is sufficient evidence to prove defendant guilty beyond a reasonable doubt. *People v. Taylor*, 76 Ill. 2d 389, 309-10 (1979).

Reversed and remanded.

FITZGERALD SMITH, P.J., and TULLY, J., concur.