**NOTICE**
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (4th) 190751-U

NO. 4-19-0751

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

Rule 23 filed September 1, 2021

Modified upon denial of Rehearing September 21, 2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Macon County |
| TERANZA JONES, | ) | No. 19CF454 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Erick F. Hubbard, |
| | ) | Judge Presiding. |

_____

JUSTICE HOLDER WHITE delivered the judgment of the court.
Justices DeArmond and Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, concluding (1) the State proved defendant guilty beyond a reasonable doubt and (2) defendant was not denied a fair trial or the effective assistance of counsel where the court properly responded to a question from the jury and defense counsel made a strategic decision regarding the jury instruction.

¶ 2    In March 2019, the State charged defendant, Teranza Jones, with one count of unlawful possession of ammunition by a felon. In July 2019, a jury found defendant guilty. In September 2019, the trial court sentenced defendant to two years' imprisonment.

¶ 3    Defendant appeals, arguing (1) the State failed to prove defendant guilty beyond a reasonable doubt and (2) defendant was denied a fair trial and the effective assistance of counsel where the trial court improperly instructed the jury on the definition of "knowledge" and counsel failed to object to the instruction. We note defendant raised an argument regarding Illinois

Supreme Court Rule 431(b) (eff. July 1, 2012). Defendant subsequently filed a motion to withdraw this issue, and this court allowed the motion.

¶ 4        On September 17, 2021, defendant filed a petition for rehearing. We now modify our decision upon denial of defendant's petition for rehearing. For the following reasons, we affirm the trial court's judgment.

¶ 5                              I. BACKGROUND

¶ 6        In March 2019, the State charged defendant with one count of unlawful possession of ammunition by a felon.

¶ 7                              A. Jury Trial

¶ 8        In July 2019, the matter proceeded to trial where a jury heard the following evidence.

¶ 9                              1. *Zachary Wakeland*

¶ 10        Zachary Wakeland, a patrol officer with the Decatur Police Department, testified that, on January 1, 2019, he stopped a black Chrysler 300 automobile driven by a person later identified as defendant. Wakeland ended up searching the vehicle and "found two unfired live rounds of .40-caliber ammunition in the glove box." People's exhibit No. 1, the two rounds of .40-caliber ammunition, was admitted into evidence without objection. According to Wakeland, when contraband involving firearms is found, the police always check to see whether the person has a Firearm Owners Identification (FOID) card or if the person is a convicted felon. When Wakeland informed defendant she was going to be arrested for possession of the ammunition, defendant stated the ammunition belonged to her husband. At the conclusion of Wakeland's testimony, a certified copy of defendant's prior felony conviction was admitted without objection.

¶ 11                                    2. *Defendant*

¶ 12            Defendant testified she left her uncle's house to go to another house around the corner on the evening police stopped her. When her vehicle was searched, the police officers placed defendant in the back seat of a police vehicle. After approximately one hour, an officer asked defendant about the .40-caliber ammunition found in the glovebox. Defendant testified the ammunition belonged to her husband. When asked how she knew the ammunition was her husband's, defendant stated, "Because we share a vehicle, first of all; and he is the one with the FOID card. He has the guns, not me. So if he found a bullet, then that would be my automatic assumption that it was his." Defendant testified she had no idea the ammunition was in the glovebox before the police officer confronted her. Defendant acknowledged her prior felony conviction for identity theft from 2002.

¶ 13                                    3. *Lee Brown*

¶ 14            Lee Brown, defendant's husband, testified he and defendant shared houses and cars. Although the Chrysler was in defendant's name, Brown testified he shared the car with defendant and drove it to East St. Louis to visit his children. Brown always took his firearm with him to East St. Louis. According to Brown, he had to split up the firearm and the ammunition, so he stored the gun in the trunk and the clip or other ammunition in the glove compartment. Brown testified he stored ammunition contained in a cardboard box in the glovebox. Defendant knew he transported a firearm in her vehicle. Brown testified he did not intentionally leave the ammunition in the vehicle.

¶ 15            Defendant's exhibit No. 1, a copy of Brown's FOID card, was admitted into evidence without objection. Brown identified People's exhibit No. 1 as "[t]wo .40-caliber cartridges for my Glock 27 that I own." According to Brown, defendant was pulled over on the

side of their house and the police car's light woke him up. Brown walked out to the scene and interacted with a police officer. Brown presented his FOID card to the officer.

¶ 16                    4. *Jury Instructions*

¶ 17        The jury instruction outlining the charge stated,

> "To sustain the charge of unlawful possession of ammunition by a felon, the State must prove the following propositions:
>
> *First Proposition*: That the defendant knowingly possessed firearm ammunition; and
>
> *Second Proposition*: That the defendant had previously been convicted of the offense of Identity Theft."

During its deliberation, the jury asked, in part, for the definition of "knowingly." The trial court consulted Illinois Pattern Jury Instructions, Criminal, No. 5.01B (approved Oct. 28, 2016) (hereinafter IPI Criminal No. 5.01B), which, in pertinent part, provides as follows:

> "[1] A person [(knows) (acts knowingly with regard to) (acts with knowledge of)] the nature or attendant circumstances of his conduct when he is consciously aware that his conduct is of that nature or that those circumstances exist. Knowledge of a material fact includes awareness of the substantial probability that the fact exists.
>
> [2] A person [(knows) (acts knowingly with regard to) (acts with knowledge of)] the result of his conduct when he is

consciously aware that that result is practically certain to be caused

by his conduct."

¶ 18        The trial court indicated it thought only the first paragraph applied because the committee note provides, "In cases where the instruction is given, use paragraph [1] if the offense is defined in terms of prohibited conduct. Use paragraph [2] if the offense is defined in terms of a prohibited result. If both conduct and result are at issue, use *both* paragraphs [1] and [2]." (Emphasis in original.) The State agreed to send back just the first paragraph. Defense counsel asked that both paragraphs be given and stated, "I'm just really worried about that last sentence on number 1, the substantial probability that the fact exists."

¶ 19        The trial court acknowledged defense counsel's concerns and noted the IPI definition may not make matters easier. The court further noted the committee note referenced a case for the general proposition that "knowingly" had a plain meaning within the jury's common understanding. The court stated its initial thought when reading the jury's question was an instruction along the lines of "knowingly has a plain meaning within a juror or person's common understanding." The State agreed "with just telling the jury that it's within their common knowledge and not doing an instruction." Defense counsel stated, "Yes. I'd rather just have the jury define it for themselves, Your Honor." The instruction ultimately sent back to the jury read, "The word 'knowingly' should be given its plain meaning within the jury's common understanding."

¶ 20                                5. *Verdict*

¶ 21        Following deliberation, the jury found defendant guilty of unlawful possession of ammunition by a felon.

¶ 22                                B. Posttrial Proceedings

¶ 23    In September 2019, the trial court heard defendant's motion for a new trial. Defense counsel argued the State failed to prove defendant guilty beyond a reasonable doubt because it only called one officer who laid out barebones testimony of the elements and could not recall further details about the search or arrest. The State argued two of the three elements were undoubtedly proven and there was sufficient evidence for a rational trier of fact to conclude defendant knowingly possessed the ammunition.

¶ 24    The trial court denied the motion for a new trial. The court indicated the evidence on the question of whether defendant knowingly possessed the ammunition was "arguably thin," but sufficient for the jury to draw the reasonable inference that defendant knowingly possessed the ammunition.

¶ 25    The matter proceeded directly to sentencing. The State recommended the minimum allowed by law—two years' imprisonment. Defense counsel also recommended the minimum sentence. The trial court sentenced defendant to two years' imprisonment and noted it was not within the court's ability to allow for probation although it thought probation would be appropriate in this instance.

¶ 26    This appeal followed.

¶ 27                    II. ANALYSIS

¶ 28    On appeal, defendant argues (1) the State failed to prove defendant guilty beyond a reasonable doubt and (2) defendant was denied a fair trial and the effective assistance of counsel where the trial court improperly instructed the jury on the definition of "knowledge" and counsel failed to object to the instruction.

¶ 29                    A. Sufficiency of the Evidence

¶ 30     Defendant asserts this court should review this claim *de novo* because no material

facts are in dispute and the issue turns on statutory interpretation.  Defendant argues the State

failed to prove defendant knew she was in possession of the two bullets in the glovebox of her

car.  As discussed below, we reject defendant's request for *de novo* review.  The question of

knowledge is a factual one to be resolved by the trier of fact.  *People v. Faulkner*, 2017 IL App

(1st) 132884, ¶ 39, 73 N.E.3d 25.

¶ 31     In advocating for *de novo* review, defendant appears to suggest the undisputed

facts failed to prove—as a matter of law—that defendant knowingly possessed the ammunition

in question.  Any suggestion that the undisputed facts failed to demonstrate, as a matter of law,

that defendant acted knowingly is meritless.  Defendant's claim is undeniably a challenge to the

sufficiency of the evidence, as defense counsel conceded at oral argument.  Here, the jury, as

trier of fact, observed and listened to the witnesses, evaluated the evidence, and reached a

verdict.

¶ 32     In this instance, undertaking *de novo* review makes no sense.  The jury made

credibility assessments and resolved the case utilizing those assessments.  In doing so, the jury

was privy to information a cold record cannot provide this court.  As this court noted in *People v.
Hadden*, 2015 IL App (4th) 140226, ¶ 28, 44 N.E.3d 681,

> "Spoken language contains more communicative information than
>
> the mere words because spoken language contains
>
> 'paralanguage'—that is, the 'vocal signs perceptible to the human
>
> ear that are not actual words.' [Citation.]  Paralanguage includes
>
> 'quality of voice (shrill, smooth, shaky, gravely, whiny, giggling),
>
> variations in pitch, intonation, stress, emphasis, breathiness,

- 7 -

volume, extent (how drawn out or clipped speech is), hesitations or silent pauses, filled pauses or speech fillers (*e.g.* "um/uhm," "hmm," "er"), the rate of speech, and extra-speech sounds such as hissing, shushing, whistling, and imitation sounds.' " (quoting Keith A. Gorgos, *Lost in Transcription: Why the Video Record Is Actually Verbatim*, 57 Buff. L. Rev. 1057, 1107-08 (2009); see also *People v. Carter*, 2021 IL App (4th) 180581, ¶ 69 (reaffirming the position taken in *Hadden*).

The information expressed through paralanguage is seldom included in the transcript, as there is no common written counterpart for these features of speech. "Paralanguage is critical to evaluating oral testimony, and we note that paralanguage is even more important when evaluating witnesses who are testifying from the witness stand." *Carter*, 2021 IL App (4th) 180581, ¶ 70. Thus, under the circumstances presented by this case, we decline to apply *de novo* review.

¶ 33 When determining whether sufficient evidence supported a conviction, "our function is not to retry the defendant." *People v. Sutherland*, 223 Ill. 2d 187, 242, 860 N.E.2d 178, 217 (2006). Instead, we must resolve " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We allow all reasonable inferences in the light most favorable to the State. *People v. Beauchamp*, 241 Ill. 2d 1, 8, 944 N.E.2d 319, 323 (2011). It is the province of the finder of fact to determine the credibility of a witness, and the finding is entitled to great weight. *People*

*v. Smith*, 185 Ill. 2d 532, 542, 708 N.E.2d 365, 370 (1999). We reverse only where the evidence is so unsatisfactory, unreasonable, or improbable that it raises a reasonable doubt as to the defendant's guilt. *People v. Evans*, 209 Ill. 2d 194, 209, 808 N.E.2d 939, 947 (2004).

¶ 34        Due process "protects an accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime for which he is charged." *People v. Young*, 128 Ill. 2d 1, 48, 538 N.E.2d 461, 472 (1989). To sustain a conviction for unlawful possession of a weapon by a felon, the State must prove the defendant (1) has a prior felony conviction and (2) had knowing possession of a firearm or firearm ammunition. *People v. Brown*, 327 Ill. App. 3d 816, 824, 764 N.E.2d 562, 570 (2002).

¶ 35        "Knowing possession" may be actual or constructive. *Id.* Constructive possession is established where (1) the defendant had knowledge of the presence of the ammunition and (2) the defendant exercised immediate and exclusive control over the area where the ammunition was found. *Id.* "Control over the area where the contraband was found gives rise to an inference that the defendant possessed the contraband." *Faulkner*, 2017 IL App (1st) 132884, ¶ 39. Knowledge of the existence of ammunition within the defendant's possession may be inferred from circumstantial evidence. *Brown*, 327 Ill. App. 3d at 824-25. Knowledge may also be proved by evidence of the defendant's declarations from which it can be inferred she knew the contraband existed. *Faulkner*, 2017 IL App (1st) 132884, ¶ 39.

¶ 36        Here, viewing the evidence in the light most favorable to the State, we conclude that a rational trier of fact could find the essential elements of unlawful possession of ammunition by a felon beyond a reasonable doubt. *Collins*, 106 Ill. 2d at 261. We note it is undisputed that defendant was previously convicted of a felony offense. There is also no dispute

the ammunition was in defendant's glovebox. The only dispute is whether defendant knew the ammunition was in the glovebox.

¶ 37 As discussed above, knowledge may be proved by circumstantial evidence, including statements made by defendant. Defendant obviously had control over the area where the contraband was found. Wakeland testified that when he asked defendant about the bullets, she immediately replied they belonged to her husband. Wakeland did not testify that defendant expressed any confusion as to the existence of the ammunition. Although defendant testified at trial that she did not know the bullets were there before the officer asked about them, conflicts in testimony are for the trier of fact to resolve. Here, the jury found defendant's self-serving claim she had no knowledge of the bullets to be incredible. Additionally, although Brown testified the ammunition was his, he also testified defendant knew he transported his firearm in her vehicle on a regular basis. Defendant and Brown both testified the vehicle was registered solely in defendant's name, but both used the vehicle regularly. Defendant asserts the ammunition was Brown's, but this argument does not defeat a finding that defendant had knowing possession of the ammunition. "If two or more people share immediate and exclusive control over an object, or share the intention and power to exercise control over it, then each person has possession." *People v. Hester*, 271 Ill. App. 3d 954, 961, 649 N.E.2d 1351, 1358 (1995).

¶ 38 Defendant cites *People v. Wise*, 2021 IL 125392, in support of her argument that the State failed to prove her guilty beyond a reasonable doubt. We conclude *Wise* is distinguishable. In *Wise*, the defendant was driving a vehicle with two passengers, one of whom was sitting in the third-row passenger seat. *Id.* ¶ 34. The officer did not think the defendant owned the vehicle and the State presented no evidence to show the defendant owned the vehicle. *Id.* The weapon was found 5 to 10 feet from the defendant and closest to the passenger in the

- 10 -

third-row passenger seat. *Id.* When testifying, the officer suggested the weapon was not within defendant's reach from the driver's seat. *Id.* Thus, the supreme court affirmed the appellate court decision vacating defendant's conviction where the State failed to prove beyond a reasonable doubt that defendant exercised immediate and exclusive control over the area in question. *Id.* ¶ 39. Here, unlike in *Wise*, there was no evidence defendant had a passenger in the vehicle that she owned, and the contraband was located in the glove box within easy reach of her position in the vehicle.

¶ 39    Viewing the evidence in the light most favorable to the State, we conclude a rational trier of fact could have concluded defendant knowingly possessed the ammunition found in her glovebox. As discussed above, defendant immediately identified the ammunition as belonging to her husband and Brown testified defendant knew he transported his firearm in her vehicle. A rational trier of fact could reasonably conclude defendant knew the ammunition was in the vehicle. Under these circumstances, we cannot say the evidence was unbelievable, improbable, or palpably contrary to the verdict. *Hester*, 271 Ill. App. 3d at 962. Accordingly, we conclude the State proved defendant guilty of unlawful possession of ammunition by a felon beyond a reasonable doubt.

¶ 40                                      B. Jury Instruction

¶ 41    Defendant next asserts she was denied a fair trial and the effective assistance of counsel where the trial court improperly instructed the jury on the definition of "knowledge" and counsel failed to object to the instruction. Alternatively, defendant asks this court to review this issue for plain error.

¶ 42    A trial court may exercise discretion in responding to questions from the jury. *People v. Lowry*, 354 Ill. App. 3d 760, 762, 821 N.E.2d 649, 654 (2004). Although the trial

court may in some instances properly decline to answer a jury's question, jurors are entitled to have their questions answered. *People v. Childs*, 159 Ill. 2d 217, 228, 636 N.E.2d 534, 539 (1994). "Thus, the general rule is that the trial court has a duty to provide instruction to the jury where it has posed an explicit question or requested clarification on a point of law arising from facts about which there is doubt or confusion." *Id.* at 228-29.

¶ 43　　　　In addition to her argument that the trial court erred by failing to provide the jury with the IPI definition of "knowingly," defendant argues counsel's failure to object denied her the effective assistance of counsel. We review claims of ineffective assistance of counsel under the familiar standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail under *Strickland*, a defendant must show counsel's performance was deficient and prejudice resulted from counsel's deficient performance. *People v. Houston*, 226 Ill. 2d 135, 143, 874 N.E.2d 23, 29 (2007). To establish prejudice, a defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *People v. Cherry*, 2016 IL 118728, ¶ 30, 63 N.E.3d 871. Judicial evaluation of counsel's performance is highly deferential. *Strickland*, 466 U.S. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Internal quotation marks omitted.) *Id.* Defendants are entitled to reasonable representation, and a mistake in strategy or judgment does not, by itself, render the representation incompetent. *People v. Fuller*, 205 Ill. 2d 308, 331, 793 N.E.2d 526, 542 (2002).

¶ 44　　　　In this case, we find defendant has failed to overcome the presumption that defense counsel's conduct was sound trial strategy. Defense counsel's choice of jury instruction

is normally a tactical decision within his or her discretion. *People v. Mims*, 403 Ill. App. 3d 884, 890, 934 N.E.2d 666, 672 (2010). We indulge a strong presumption that defense counsel's decision to agree to the instruction sent back to the jury was a sound trial strategy. *Strickland*, 466 U.S. at 689. In addition to this presumption, we have defense counsel's expressly stated reasons for agreeing to the jury instruction sent back in this case. When the jury asked for a definition of "knowingly," the trial court consulted IPI Criminal No. 5.01B, which, in pertinent part, provides as follows:

> "[1] A person [(knows) (acts knowingly with regard to) (acts with knowledge of)] the nature or attendant circumstances of his conduct when he is consciously aware that his conduct is of that nature or that those circumstances exist. Knowledge of a material fact includes awareness of the substantial probability that the fact exists.

> [2] A person [(knows) (acts knowingly with regard to) (acts with knowledge of)] the result of his conduct when he is consciously aware that that result is practically certain to be caused by his conduct."

¶ 45 The trial court indicated it thought only the first paragraph applied because the committee note provides, "In cases where the instruction is given, use paragraph [1] if the offense is defined in terms of prohibited conduct. Use paragraph [2] if the offense is defined in terms of a prohibited result. If both conduct and result are at issue, use *both* paragraphs [1] and [2]." (Emphasis in original.) The State agreed with sending back just the first paragraph.

Defense counsel asked that both paragraphs be given and stated, "I'm just really worried about that last sentence on number 1, the substantial probability that the fact exists."

¶ 46         The trial court acknowledged defense counsel's concerns and noted the IPI definition may not make matters easier. The court further noted the committee note referenced a case for the general proposition that "knowingly" had a plain meaning within the jury's common understanding. The court stated its initial thought when reading the jury's question was an instruction along the lines of "knowingly has a plain meaning within a juror or person's common understanding." The State agreed "with just telling the jury that it's within their common knowledge and not doing an instruction." Defense counsel stated, "Yes. I'd rather just have the jury define it for themselves, Your Honor." The instruction ultimately sent back to the jury read, "The word 'knowingly' should be given its plain meaning within the jury's common understanding."

¶ 47         In this case, the record demonstrates defense counsel's intentional trial strategy to not further instruct the jury regarding the definition of "knowingly." This was an intentional strategic decision to minimize attention regarding defendant's culpability. Defense counsel was particularly worried about the final sentence of the first paragraph: "Knowledge of a material fact includes awareness of the substantial probability that the fact exists." IPI Criminal No. 5.01B. Counsel's concern is understandable given the testimony in this case. Brown testified defendant knew he regularly drove her car to East St. Louis and took his firearm with him. Defense counsel made a strategic choice to agree to instruct the jury to give "knowingly" its plain meaning within the jury's common understanding.

¶ 48         Defendant relies on *Lowry* and *People v. Sperry*, 2020 IL App (2d) 180296, in support of her ineffective assistance of counsel claim. In *Lowry*, the appellate court found that

- 14 -

"[d]efense counsel's failure to offer the proper instruction in response to the question by the jury was not trial strategy, but the result of his own confusion regarding the question asked by the jury." *Lowry*, 354 Ill. App. 3d at 767. In this case, the record demonstrates defense counsel was not confused by the question posed by the jury but concluded the IPI instruction would not benefit defendant. The court in *Lowry* also found reversible error where the trial court failed to respond to the jury's inquiry. *Id.* at 762-63. In this case, the trial court did respond to the jury's question—it instructed the jury to rely on the plain meaning of knowingly as understood within the jury's common understanding of the word.

¶ 49     As noted, defendant also relies on *Sperry* to argue that defense counsel's failure to insist the IPI instruction on knowledge be given was ineffective assistance of counsel. The question posed by the jurors in *Sperry* is distinguishable from this case. In *Sperry*, the jury sent the following question to the court: "Does 'knowingly discharged a firearm,' mean he intended to discharge the gun on purpose or he knew a gun was discharged?" *Sperry*, 2020 IL App (2d) 180296, ¶ 8. The trial court declined to answer the jury's question and instead informed the jury the instructions already received were sufficient. *Id.* Additionally, defense counsel in *Sperry* did not articulate a tactical trial strategy to justify his failure to insist on the IPI definition of "knowingly."

¶ 50     The court in this case did respond to the jury's query and instructed them to rely on the plain meaning of knowingly. The court properly responded to the jury's inquiry and we find no error on the part of the trial court. We similarly find no objectively unreasonable performance on the part of trial counsel. Defense counsel made a tactical decision that the use of the IPI instruction would prejudice defendant. Therefore, we find counsel's performance reasonable under prevailing professional norms. Under the facts of this case, the IPI instruction

on "knowingly" may have prejudiced defendant given the testimony elicited at trial. Having found the trial court did not err in refusing to tender the IPI instruction on "knowingly" and defense counsel's acquiescence to the modified instruction on "knowingly" was not unreasonable, we affirm the trial court's judgment.

¶ 51       In the alternative, defendant asks this court to review this issue for plain error pursuant to Illinois Supreme Court Rule 451(c) (eff. Apr. 8, 2013). However, as we find no error occurred, we decline to review this issue under the plain-error doctrine.

¶ 52                                III. CONCLUSION

¶ 53       For the reasons stated, we affirm the trial court's judgment.

¶ 54       Affirmed.