**NOTICE:** This order was filed under Illinois Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 250019-U

Order filed April 8, 2026
_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-25-0019 Circuit No. 23-CF-838 |
| WILLIAM J. SILAS, | ) ) ) | Honorable William S. Dickenson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE ANDERSON delivered the judgment of the court.
Justices Holdridge and Bertani concurred in the judgment.
_____

**ORDER**

¶ 1     *Held*:   Counsel was not ineffective for declining to additionally instruct the jury.

¶ 2     Defendant, William J. Silas, appeals from his conviction for unlawful possession of a stolen motor vehicle. Defendant argues counsel was ineffective for failing to assure that the jury was instructed as to two crucial principles of law related to unlawful possession of a stolen motor vehicle: the definitions of intent and permanently depriving an owner of the use of property. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        Defendant was initially charged, *inter alia*, with aggravated vehicular hijacking (720 ILCS 5/18-4(a)(3) (West 2022)) for allegedly taking a motor vehicle from Mekiel Burns while armed with a dangerous weapon on December 2, 2023. The case proceeded to a jury trial on May 21, 2024, solely for the offense of simple vehicular hijacking (*id.* § 18-3(a)). Burns testified that on December 2, 2023, at approximately 6:30 p.m., he drove an SUV to his brother's house and parked in a nearby alley. Burns exited the vehicle and left the engine running. A male, later identified as defendant, pointed a gun at Burns and said, "just give it up." A female, later identified as Embassy Spain, entered the driver's seat of the SUV. Defendant entered the front passenger side and they drove away. Burns asked individuals nearby to call the police. He explained what had happened to the responding officers who disseminated information regarding the incident on the police radio dispatch. On December 3, 2023, Burns identified defendant and Spain from photograph arrays. Burns denied being with defendant earlier that evening.

¶ 5        A sergeant with the Kankakee County Sheriff's Department testified that on December 2, 2023, he was on patrol in a marked squad car. The sergeant received a dispatch at approximately 6:30 p.m., that armed subjects stole an SUV near his location. The sergeant located and followed the SUV. The SUV attempted to flee but drove through an intersection and crashed into a field, rendering it inoperable. Defendant and Spain fled on foot but defendant was located and arrested.

¶ 6        Defendant testified that on December 2, 2023, he was at a barbershop with Spain, Burns, and others. Defendant did not know Burns. Individuals were smoking marijuana and consuming alcoholic beverages. Defendant asked Burns if he had any marijuana. Burns agreed to sell marijuana to defendant. Burns left the barbershop and returned but had less marijuana than they had agreed upon. Defendant told Burns he could keep the extra money if he drove defendant and

Spain to a location in Bradley. Burns agreed, and they left the barbershop in the SUV. Burns said he was "going to one of [his] spots." Defendant said he would prefer to just go where they agreed. Burns continued to drive defendant and Spain to an alley that was unfamiliar to defendant. Burns parked and exited the SUV. Defendant moved to the driver's seat and drove away. Defendant feared for his life because his friend had been murdered under similar circumstances. Defendant intended to drive to Bradley and leave the SUV after he arrived at his destination.

¶ 7  The State requested a lesser included offense instruction for unlawful possession of a stolen motor vehicle, which was submitted over defense counsel's objection. The jury instructions provided, *inter alia*, (1) "A person commits the offense of possession of a stolen motor vehicle when that person possesses a vehicle when not entitled to possession of the vehicle and when knowing it to have been stolen or converted[,]" (2) "The term 'stolen property' means property over which control has been obtained by theft[,]" and (3) "A person commits the offense of theft when he knowingly obtains unauthorized control over property and intends to deprive the owner permanently of the use or benefit of the property." The jury instructions did not include the definitions of intent or permanently deprive.

¶ 8  During closing arguments, counsel argued:

"There's another jury instruction that defines what stolen property means. Remember, it's not the name of the crime, but it's the definition that matters. That jury instruction will define stolen property as property over which control has been obtained by theft.

There's another jury instruction that's going to define what theft is. And included in that definition of theft, you're going to see the intent—that he must intend to deprive the owner permanently of the use or benefit of the property. This

3

is why I say that this is close, but it's not exactly what he did. And when looking at the definition, remember what [defendant] testified to."

Counsel further argued:

"[Defendant] didn't want [the SUV] because he thought it was a nice car and wanted it for himself or thought it was too nice for Mr. Burns to have. He took it because he wanted to get out of a situation where he believed his life was in danger. He wanted to take it temporarily, not permanently."

During rebuttal closing argument, the State argued that even though defendant testified he did not intend to permanently deprive the owner of the use of her vehicle, "he rammed it off the road and damaged the car, and he deprived [the owner] of that car." Counsel objected. The court overruled the objection and instructed the jury that they should disregard any arguments that were not supported by the law or facts.

¶ 9        During deliberations, the jury sent a note to the court asking, "[c]an you help us clarify what it means to intend to deprive the owner permanently of the use or benefit of the property." While discussing the matter with the parties, the court noted it could give Illinois Pattern Jury Instructions, Criminal, No. 13.33B (approved Dec. 8, 2011), which indicates the phrase "permanently deprive" means to (1) "defeat all recovery of the property by the owner," (2) "deprive the owner permanently of the beneficial use of the property," (3) "retain the property with intent to restore it to the owner only if the owner purchases or leases it back, or pays a reward or other compensation for its return," or (4) "sell, give, pledge, or otherwise transfer any interest in the property or subject it to the claim of a person other than the owner."

¶ 10        The court asked for counsel's thoughts on giving the jury a version of the instruction. Counsel responded that the instruction did not address the intent part of the jury's question. He

4

was therefore concerned that the jury may be misled to believe that the instruction completely addressed their question. Counsel was particularly wary of giving the instruction because of the State's argument in closing rebuttal that defendant permanently deprived the owner of the vehicle by damaging it. Counsel and the State agreed the jury should be instructed that they had already heard the law.

¶ 11    The jury found defendant guilty of unlawful possession of a stolen motor vehicle. Defendant filed a posttrial motion, arguing that the court erred in instructing the jury that it could find defendant guilty of the lesser included offense of unlawful possession of a stolen motor vehicle. The court denied the motion. Defendant was sentenced to seven years' imprisonment. Defendant appealed.

¶ 12                                      II. ANALYSIS

¶ 13    On appeal, defendant argues counsel was ineffective for failing to assure that the jury was instructed as to two crucial principles of law related to unlawful possession of a stolen motor vehicle: the definitions of intent and permanently deprive. Defendant does not argue that the circuit court abused its discretion in instructing the jury or failing to answer the jury's question.

¶ 14    Illinois courts review claims of ineffective assistance of counsel under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *People v. Wise*, 2019 IL App (2d) 160611, ¶ 51. Under *Strickland*, counsel renders ineffective assistance when (1) counsel's performance falls below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's deficient performance, the results of the proceedings would have had a different outcome. *People v. Lofton*, 2015 IL App (2d) 130135, ¶ 24. "A defendant bears the burden of proof on both elements of this test ***." *People v. Burks*, 343 Ill. App. 3d 765, 775 (2003). "The failure to satisfy either the deficiency prong or the prejudice prong of the *Strickland*

test precludes a finding of ineffective assistance of counsel." *People v. Enis*, 194 Ill. 2d 361, 377 (2000). We review claims of ineffective assistance of counsel *de novo* if they were not raised in the circuit court. *Lofton*, 2015 IL App (2d) 130135, ¶ 24.

¶ 15 There is a strong presumption that counsel's actions are the result of sound trial strategy and not incompetence. *People v. Burrows*, 148 Ill. 2d 196, 232-33 (1992). Counsel's decision as to what jury instructions to tender is a matter of trial strategy generally immune from ineffective assistance claims. *People v. Douglas*, 362 Ill. App. 3d 65, 75 (2005). "However, the failure to offer an instruction essential to the fair determination of the case by the jury cannot be excused as trial strategy." *People v. Lowry*, 354 Ill. App. 3d 760, 767 (2004). "Accordingly, counsel's decision as to which jury instruction to tender can support a claim of ineffective assistance of counsel only if that choice is objectively unreasonable." *People v. Mister*, 2016 IL App (4th) 130180-B, ¶ 97.

¶ 16 We find *People v. Jones*, 2023 IL 127810, instructive. In *Jones*, defendant was charged with unlawful possession of ammunition by a felon, and, during deliberations, the jury asked for a definition of "knowingly." *Id.* ¶ 10. The court noted it could provide an instruction that stated in part, "Knowledge of a material fact includes awareness of the substantial probability that the fact exists." (Internal quotation marks omitted.) *Id.* ¶ 10. Counsel believed, and the court agreed, that the instruction would not aid the jury in resolving the matter and likely harm defendant's case. *Id.* ¶¶ 11-12. The Illinois Supreme Court rejected defendant's claim that counsel was ineffective for failing to request the instruction because the record demonstrated that counsel "made a tactical decision that the jury's common understanding of the word knowingly would encompass a higher standard of proof than an awareness of the substantial probability that the fact exists." (Internal quotation marks omitted.) *Id.* ¶ 67.

6

¶ 17       Here, as in *Jones*, even though further instruction could have been provided, counsel's decision to oppose further instruction was the result of sound trial strategy because the proposed instruction could only have broadened the jury's view of the matter and harmed defendant's case. Counsel devoted a large portion of his closing arguments to explaining to the jury the instructions they would receive. Counsel argued the jury should focus on defendant's testimony and the provided definition of theft, which required the State prove defendant intended to deprive the owner permanently of the use or benefit of the property, indicating that it was "close, but it's not exactly what [defendant] did." By declining to request additional instruction, counsel wanted to limit the jury's view of theft and force them to rely on the parties' arguments and their common understanding of the terms permanently deprive and intent. The instruction regarding permanently deprive in particular, which contains four separate definitions of the concept, risked broadening the jury's view to the detriment of defendant. We are also unable to discern any benefit defendant would derive from the jury being provided the instructions, and defendant does not make a persuasive argument on this point.

¶ 18       Counsel made a tactical decision in deciding not to further instruct the jury. Given defendant's testimony, counsel's closing arguments, and the instructions already provided to the jury, counsel reasonably concluded that further instruction could only harm defendant, particularly because counsel would not have an opportunity to discuss additional instructions with the jury. Therefore, because counsel's decision was the result of sound trial strategy, defendant has failed to establish the deficiency prong of the *Strickland* analysis. His claim of ineffective assistance of counsel necessarily fails. See *Enis*, 194 Ill. 2d at 377.

¶ 19                                          III. CONCLUSION

¶ 20       The judgment of the circuit court of Kankakee County is affirmed.

7

¶ 21        Affirmed.